Good morning, Your Honors. May it please the Court, Drew Szyminski on behalf of Petitioner. Before we begin, I'd like to reserve two minutes for rebuttal. All right. Your Honors, this case presents the issues of credibility based on implausibility, imputed political opinion, and the distinction between persecution and prosecution. Now, the BIA did not find your client incredible, is that right? That's right. The BIA stated that the record demonstrates that she will be sought for arrest for importing these articles, and it seems that they've accepted her testimony as true. If this Court would like me to examine the IJ's credibility finding, I'd be happy to do so. Otherwise, I'll move on. Turning to the issue of persecution versus prosecution, both the BIA and the IJ fail to cite even one single case regarding this distinction, and they ignore cases which provide exceptions to the general rule that prosecution is not persecution. You cited Zhang in a recent case. Is that the way to pronounce it, Zhang? I believe so. It might be Zhang. How does Zhang control this case, do you argue, then? Zhang would control this case as far as Falun Gong being a political opinion. It would also control this case because in that case, this Court noted specifically in its conclusion that the government accused him of importing anti-government articles, which is exactly true in this case, and that the record demonstrated that the prosecution for Falun Gong was politically motivated because the President had made some comments, and I believe that the record in this case also demonstrates the same thing. On page 248 and 273, there's evidence showing that the crackdown on Falun Gong is politically motivated, and therefore, because it's a pretext for persecution, prosecution under these laws must be considered to be persecution. And in Zhang, the Court didn't even examine the issue of whether persecution came from this prosecution. It was a given because the government told them when they were searching the house, when they were searching Zhang's house, that Zhang had imported articles from the United States that were critical of the Chinese government's treatment. Now, he also wrote some letters espousing that idea that the Chinese government was sort of hiding something, but the same can be true in this case because the articles, the newspaper articles that Petitioner brought in were critical of the Chinese government. And when they were searching Petitioner's house, they told Petitioner's brother, we're searching your house because she brought in anti-government articles. So between the government pretext of persecuting someone because of their political opinion and the government stating that they were searching them and harassing them because of these anti-government articles, Zhang should also control on, you know, impute a political opinion. Well, did Ms. Zhao, she was seeking asylum and withholding of removal? Yes. And you're arguing she's entitled to both. Yes. Zhang, they granted withholding of removal. Yes. In Zhang, I believe Zhang missed the one-year bar, and so the Court didn't even consider asylum. But they held that in fairly similar conditions that the record demonstrated that Zhang had satisfied the higher burden. More probable than not that he would be persecuted if he were. Right. And here Petitioner is only arguing that the record compels the finding that it's reasonable for her to fear persecution. She doesn't even have to get to that burden of more likely than not. But in Zhang, Zhang was a Falun Gong practitioner and wrote his parents back in China, which was intercepted, about his deep-seated beliefs. Zhao was taking the position that the letters or the articles that were brought in were done as an accommodation and that don't show any alineation in Falun Gong. Right. And it's Petitioner's contention that it shouldn't matter at all. As the record states on – the expert states on page 233, it – he says that it doesn't matter. He was directly asked what effect does her nonbelief in this have on the punishment that she faces upon return. And he said it doesn't matter whether she believes or not. The important thing is that China persecutes those which it sees as a threat to its regime. And that includes those who believe and sympathize with Falun Gong. And I don't have the cite to the record, but he also states at another point that ordinary practitioners are actually treated more leniently than those who are bringing in articles. Where is the evidence that she sympathizes with Falun Gong? I think she just said that she brought this back because people asked for it. Well, the evidence that she sympathizes with Falun Gong will be imputed to her. I mean, the – the – Because she was bringing in contraband that happened to be Falun Gong, she's imputed as being a Falun Gong. If she was bringing in contraband that had to do with something else, she would be imputed that she was something else? Well, I think that the critical point is that she brought in contraband, which was articles critical of the Chinese government's crackdown on Falun Gong. What do we make of the fact that she participated in a rally in front of the Chinese embassy saying that the Falun Gong were being persecuted? Well, I believe, like anything else, her views on things can change. As she stated in the record that while she wasn't that close friends originally with the person that she brought the articles in for, after a party in 2000, she began to have more discussions with her, and she began to become more sympathetic. And I think, if anything, the fact that she has gotten word from her family in China that China is now cracking down on her, that they've come to her house, if anything, that is going to have the effect of her being more sympathetic to those who are, you know, believers in Falun Gong because she now has that experience. So it seems perfectly logical that she may develop into that, you know, political opinion now and enough to demonstrate. Is this a case where she's contending there's an imputed political opinion to her? Yes. Yes. And I think it logically follows that if she's going to be prosecuted for something, and that prosecution is, in fact, persecution, and that persecution comes out of the same act that causes them to think that she has this political opinion, the nexus must be established. In other words, if an action gives rise to persecution and that same action gives rise to someone thinking that you have a political opinion, then the nexus must be there, logically. Thank you. I believe I have two minutes. Two minutes. We'll hear from the government. Good morning. Joan Smiley from the Department of Justice here on behalf of the Attorney General. The Supreme Court has held that a determination, including an adverse credibility determination, should not be reversed unless the evidence in the record is so compelling that a reasonable fact finder could not decide any other way. Do we have an adverse credibility finding here in light of the BIA opinion? Yes, we do. The immigration judge clearly made an adverse credibility determination, and here the board adopted and affirmed the immigration judge's decision, so they also adopted the adverse credibility finding. Do you have the language in the BIA opinion that you can point to? Yes. Well, yes, I do. They begin the decision by stating that they adopt and affirm the decision of the immigration judge, and that is on page two of the record. We adopt and affirm the decision of the immigration judge, and then they parenthetically indicate that noting that adoption or affirmance, in whole or in part, is a statement that the board's conclusions coincide with those of the immigration judge. Then they go on to state that there's no nexus between a protected characteristic that Petitioner may have held and any motive on the behalf of the Chinese authorities in seeking her arrest. They do state that they accept her testimony that she neither joined or believed in the Falun Gong movement, and that's clear in her testimony. She was unequivocal that she's not a member, she didn't participate, and there's no indication of any sympathy that counsel had referred to in his opening argument. As Judge Bea observed, in the Zhang case, there's really a very critical difference between the Zhang case and the case at hand, in that in the Zhang case, the Petitioner there, Zhang, was a Falun Gong practitioner. It was very clear in the record. Also, he was found credible. He was an active follower. His family were followers. His brother was arrested with other Falun Gong individuals for anti-government protests. We don't have that in this case. In Zhang, his parents participated in a large demonstration and were arrested. We don't have that here. His parents were under constant surveillance. That has not been alleged in this case. The family was persecuted. Also in Zhang, the testimony was that he distributed Falun Gong materials to several people, family and friends, and was an active practitioner. Here again, her only involvement that we know of is that she brought in 20 articles from Singapore for someone that she testified she was not close to. It was a classmate. No, her friend was arrested. The record demonstrates that, I guess. Yes. Then at her home and family were searched. There was an arrest warrant and warrants to search.  There were several warrants that were presented. However, I would note that, as we indicated in the briefs, that the documents submitted in the form of the search warrant and arrest warrants had inconsistent addresses for Petitioner. She explained that, I think. Well, the expert testified that there are floating labor populations there, but the immigration judge found that it seemed clear that Petitioner did not fall within that category of a floating labor population. Indeed, she was university educated in business and international business. She held a prestigious position in the president's office of a large software company. But isn't it in the record that there are very odd, strict rules about changing registration and so forth as to where you live in China? There is an allegation in the record about that. However, the expert testimony is that also there are a lot of fraudulent documents coming from that area of China, and he would not verify the authenticity of Petitioner's documents. Therefore, it was reasonable for the immigration judge to find that Petitioner's claim was simply implausible, that she would risk the severe criminal sanctions and the loss of her job in the president's office of this company to bring in articles that she knew to be illegal. She testified, yes, I know that it's illegal to do that. But she also testified that she went in and out of China and never was searched, and indeed she was not searched on this occasion either. That's correct. She testified that she traveled to and from Singapore, from Singapore to China, apparently in connection with her employment. The fact remains she knew that it was illegal to bring in this material. But nonetheless, I think the record is quite clear that she did bring it in. Yes, there's no dispute that she brought in these materials. However, according to her testimony, as well as the expert's testimony, the possible sanctions for this activity, the prosecution, would be relatively minor. It would be a brief jail term, is what the expert testified to. Well, he also testified that they could go to the labor camp, send them to the labor camp for reeducation, and that it could be a longer sentence. The lowest would be a short jail term. Well, for instance, in the materials in the record, as well as in the Zhang case, they refer to the reeducation camps. But again, in Zhang and in the other examples, these were well-documented cases of Falun Gong practitioners. That's not what we have in this case. Well, we might get something more serious because the practitioners, although arrested on some kind of a charge, wouldn't be necessarily guilty of the criminal charge, where bringing the documents is a criminal under the Chinese law. Well, in Zhang, the family was arrested for practicing Falun Gong in their home. Yes, but what was the criminal statute? I'm not familiar with that. It didn't specify, I don't believe, what the criminal statute was. And interestingly, in the arrest warrant and the search warrant in this case, there's no indication of what the charge is either. Counsel, may I interrupt you for just a second? Yes. The IJ goes on for pages about how Ms. Zhao's testimony is implausible because she's the cream of the new Chinese society and she has a slight friendship with the person to whom she's bringing in this contraband, and on that basis finds her incredible or makes an adverse credibility finding. Can you explain that to me? I mean, why is that a basis sufficient to make an adverse credibility finding? Well, first, that was not the only basis for the adverse credibility. Oh, the different addresses on the warrants, okay. Okay. Well, and the other things that I referred to, the inconsistencies in the arrest warrants, the expert's testimony. But the immigration judge as the fact finder is the person that's in the best position to evaluate an applicant's credibility, whether the testimony has a ring of truth to it. And here, based on all the testimony, based on the fact that she was admitted in May of 2001 as a business visitor for one month, and then there's no testimony about, you know, whatever happened to her job. Was she terminated? There's nothing in there about her quitting or being terminated. Based on all of the information in the record, he determined that it was an implausible claim and she was not credible. But that's not sufficient in immigration cases to say based on all the evidence. But you have to have substantial evidence of a material fact which is testified to inconsistently. What is that fact? Well, we would submit that the immigration judge in the 23-page decision set forth all of those facts, the ones that I've referred to, her whole story, the fact that she came here for a month, the fact that her claim appeared to be implausible in light of the evidence in the case, that she would take this risk, knowing that it was illegal. But she did take the risk. So, I mean, it's not implausible that she took the risk. Well, she says she took the risk. The fact that the documents were not authenticated by the expert, all of these things, the fact that there were inconsistent addresses in the arrest and search warrants, the fact that she. . . Is it your position that she didn't really bring the documents in? Excuse me? Is it your position that she didn't really bring the documents in, she shouldn't be believed as to that? We haven't taken that position. The government's position is that if she did bring the documents in, as she claims, her claim is implausible based on what she has said and based on the information in the record that we have in our brief and that I've alluded to. But ultimately, it's that she didn't bring the documents in. She's making the whole thing up. We're not. . . No, we haven't taken the position that she didn't bring the documents in, but that her claim is implausible and that even notwithstanding the adverse credibility determination, there's no nexus, as the board indicated, between any future mistreatment and a protected ground. She hasn't shown that she holds or is perceived to hold a political opinion that's known to a potential persecutor and that any persecution would be on account of that opinion. I see that my time is up. Unless the panel has any questions, we would rest on the briefs that have been filed. Thank you. Your Honor, the regulations provide that if the petitioner is credible, she doesn't need documentation in order to support her case. The BIA has clearly found her credible, and therefore, she doesn't even need the documents. However, she clearly explains on page 127 that she had a different address than the one in her family registration because she couldn't get authorization to live in the place of her new job. The expert testifies on page 221 and 222 that it's not a given that anybody can just up and move and get a new family registration. And the I.J. and government counsel misstate the expert testimony because he only mentions this floating population for three sentences, and his entire testimony mentions it three sentences, and only to say that it's impossible for those people to change their registration. Why was the I.J. wrong in making the adverse credibility determination? The I.J. was wrong in making the adverse credibility determination because it's based completely on speculation. Nothing that the judge points to in the record supports the finding. The judge states that she wasn't very good friends and that she had a very good job. However, there's nothing in the record to support that petitioner's habit of helping friends, which she testified to, the Chinese custom of helping others, which she also testified to. There's nothing in the record that shows that those customs and habits wouldn't apply to her relationship. I mean, the I.J. doesn't even try to say that. All he says is they aren't good friends, she's a businesswoman, it's implausible. No way. And that's just not enough to support a finding. As far as Zhang and his practicing and his family being arrested, the court in Zhang mentioned that the family being arrested goes to the likelihood. It didn't go to the imputation of political opinion. When the court in Zhang looks at the imputation of political opinion, they state that the Chinese government said that he sent in anti-government articles and that the record establishes that the prosecution of Falun Gong is politically motivated. All right. Thank you very much. Thank you very much, counsel. The matter is submitted.
judges: B .Fletcher, Thompson, Bea